[No. 33825. Department Two. August 29, 1957.]

FRANK H. BROWNING, *Appellant*, v. THE CITY OF SEATTLE *et al., Respondent.*[1]

*Kennett, McCutcheon & Soderland,* for appellant.

*A. C. Van Soelen* and *Glen E. Wilson,* for respondents.

[1]Reported in 314 P. (2d) 648.

SCHWELLENBACH, J.—This is an appeal from a judgment in favor of the defendants, dismissing an action brought by a civil service employee of the city of Seattle for restoration of his former employment, back salary, and other relief, tried to the court.

May 9, 1922, Frank H. Browning became a civil service employee of Seattle, with the title of "Engineer-Examiner." He occupied that position at all times material to this case.

October 8, 1947, he became sixty-five years of age. Section 13(a) of Ordinance No. 57075, as amended, which was "AN ORDINANCE creating and establishing a retirement and pension system for superannuated and disabled civil service officers and employees of the City of Seattle" provided:

"(a) Each member of the Retirement System shall be retired on the first day of the calendar month next succeeding the month in which the member shall have attained the age of sixty-five (65) years. Provided that upon written request of the head of the office or department in which the member is employed, certifying that continuance in employment of the member is advantageous to the public service, the Board of Administration may grant the request for extension of time for retirement for not to exceed one year and at the end of that time may grant another extension or extensions of time for retirement by similar action of the head of the office or department: Provided further that no continuance in employment shall be permitted beyond the first day of the calendar month next succeeding the month in which the member shall have attained the age of 67 years."

In 1947 and 1948, requests for extension of time for retirement were made and granted. However, on November 1, 1949, the civil service commission ruled that it could no longer recognize Mr. Browning's status as a regular civil service employee, although it fully appreciated the able services which he had rendered the city. His account with the city employees' retirement system was closed, and no further contributions were accepted from him.

Nevertheless, he continued with his duties under temporary employment as a "provisional" employee, and was so carried on the payroll. This employment continued for

a period of two years, ending December 31, 1951. At that time, the city council discontinued the position of engineer-examiner.

During the two-year period just mentioned, Mr. Browning received no pension. He began receiving it on January 1, 1952. It was computed for a period prior to November 1, 1949, the date of his retirement.

This action was brought against the city, naming as additional defendants the members of the civil service commission and the members of the board of administration of the retirement system. Plaintiff sought to compel the city to restore him to his former position and for judgment for salary (together with salary increases to which he alleged he was entitled) plus interest, less certain deductions on account of retirement, which would have been made subsequent to November 1, 1949. He also sought a judgment requiring the board of administration to compute his retirement allowance in accordance with the provisions of the applicable ordinances of the city, and, in this connection, he sought the appointment of a referee to investigate the administration of the retirement fund.

The trial court made and entered findings of fact and concluded that, under the city charter, the legislative authority of the city was authorized to provide for compulsory retirement for age; that it did so, and that the plaintiff was duly and lawfully retired at the age of sixty-seven; that the plaintiff did not establish that the administration of the retirement fund was faulty or defective; that he had not been discriminated against; and that he was not entitled to the relief prayed for.

Judgment of dismissal was entered, and this appeal follows.

Appellant presents thirty assignments of error. Although we agree with the trial court that there are only two issues involved, (1) the legality of appellant's retirement on November 1, 1949, and (2) the question of discrimination, we shall group the assignments as follows:

1. Error in making findings and concluding that the ordinance and rules under which appellant was retired were valid and in full force and effect, and that he was lawfully retired at age sixty-seven; and in refusing to find that the ordinance and rules were invalid and that appellant was wrongfully and unlawfully separated from his position under the guise of compulsory retirement;

2. In entering findings and in denying proposed findings on the question of discrimination, and in refusing to find that the action of the city council in eliminating the position of engineer-examiner was discriminatory and an abortive attempt to get rid of him;

3. In finding that after November 1, 1949, appellant was a mere provisional employee;

4. In finding that appellant's account was properly kept, and that the administration of the retirement fund was in accordance with law, and in refusing proposed findings to the contrary;

5. In entering judgment to the effect that appellant was not entitled to the relief sought.

The 1927 charter expressly provided in § 31, Article XVI:

"The commission may fix by its rules the age at which a person in the service of the city, appointed under civil service rules, may be retired from service."

This section was omitted from the 1946 charter. Appellant contends that the people, in their charter, made no provision for compulsory retirement for age.

Article XXII, § 13, of the city charter, adopted by the people in 1946, provides:

"Section 13. RETIREMENT, DISABILITY, PENSION AND DEATH BENEFIT SYSTEM: The legislative authority may, by ordinance, establish a retirement and pension system for superannuated officers and employees of the city and of the Seattle public library, . . ."

■ A similar provision appeared in the charter amendment adopted in 1927. It is quite evident that the ordinance quoted hereinbefore was adopted in accordance with, and under the authority of, the charter provision relating to the

establishment of a retirement system. The city council was authorized by the people to establish, by ordinance, a retirement system for superannuated officers and employees of the city. It did so, and set the age limit at sixty-seven years. The trial court did not err in concluding that the ordinance and rules under which appellant was retired were valid and in full force and effect, and that he was lawfully retired at age sixty-seven.

Appellant contends that he was not superannuated in fact; that he was not "worn out," "infirm," or too old to perform the duties of his office. The record discloses that he was alert and competent. His letters to the board of administration disclose a knowledge of law, government, accounting, and economics, and display a vigor of expression. He poses this question in his brief:

"When the people of Seattle amended their Charter in 1927, and when they adopted a new Charter in 1946, what did they mean by the following language,

" 'The legislative authority may, by ordinance, establish a retirement and pension system for *superannuated officers and employees of the city* * * * *'?

What does the word 'superannuated' mean to you Judges? Does it mean 'worn out,' 'senile,' 'too old for service,' or does it mean the attainment of an arbitrarily fixed age?"

In reply to the question, one of the judges admits that the word "superannuated" causes him to shudder. However, we find the following definition in Webster's New International Dictionary (2d. ed.) 1954:

"One retired or disqualified on account of old age or reaching an age limit."

We are satisfied that the people of Seattle, when they adopted their charter, merely used the word as a guidepost by which the legislative authority of the city might designate an age limit at which officers or employees should be retired. It is not within our province to question the wisdom of the council in setting the age limit at sixty-seven years. The action was not arbitrary or capricious.

The trial court found that appellant had not been discriminated against, but had been treated the same as

many other employees who had been retired. There was testimony that salary raises had been granted to some officers and employees after they had been retired and while working as provisional employees. However, we cannot say that the record clearly preponderates against the court's findings as to discrimination. Furthermore, after having been retired, appellant had no further rights as a civil service employee.

The court found that several persons had been retained in city service after age sixty-seven for as much as five years. In its oral opinion, the court commented on the action of the council in abolishing the position of engineer-examiner on December 31, 1951, and indicated its belief that this action was the result of human emotions. We are unable to determine the reason for this action on the part of the council, although it is evident, from the record, that appellant had "needled" certain officials by his criticism of them. Nevertheless, at that time, appellant had ceased to be a civil service employee and had no rights to be violated.

■ Appellant contends that, in any event, his retirement fund is entitled to draw interest during the two-year period from age sixty-seven to sixty-nine, in which he was retained as a provisional employee, and during which time his fund remained dormant. He was tendered interest checks on that portion of the fund to which he had contributed, but not on that portion contributed by the city. It was the duty of the city to administer the fund for the benefit of all of the members of the retirement system, rather than for the benefit of any individual member.

The trial court found that appellant's account in the city employees' retirement fund had been properly kept, and that the administration of the fund had been in accordance with law. From our examination of the record, we cannot say that the evidence clearly preponderates against such finding. It follows that appellant was not entitled to have

a referee appointed to investigate the administration of the retirement fund.

The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

November 25, 1957. Petition for rehearing denied.